## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICK G. LYLE, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:12-CV-00959 (VLB) |
| | : | |
| v. | : | |
| | : | |
| IRVING JAMES, IRA L. JAMES, THELMA | : | |
| RUSSELL, SHERMAN JAMES, JACOB | : | |
| JAMES, DUANE K. JAMES, ANN | : | |
| ABDULLAH, HERMAN JAMES, LESTER | : | |
| JAMES, and ROBERT JAMES, JR., | : | |
|     Defendants. | : | JUNE 25, 2014 |

## MEMORANDUM OF DECISION FOLLOWING BENCH TRIAL

This interpleader action was filed on June 29, 2012 by Patrick Lyle, a licensed attorney and escrow agent and trustee of the estate of the Defendants' deceased father, Robert James, Sr. At the time of filing, Lyle held in escrow $9,437.50 from the sale of two parcels of property in Hartford, Connecticut owned by Robert James, Sr. The Defendants each claim entitlement to these funds, which were deposited with the Court on October 18, 2013. Lyle has been unable to distribute the funds without exposing himself to double liability arising from the competing claims of the Defendants. A trial to the Court was held on April 28, 2014 with Ira L. James as the sole appearing Defendant. The Court ruled against Ira James on his unjust enrichment claim at the conclusion of his presentation of evidence, summarizing the reasons therefore. The Court hereby articulates fully its reasons for its ruling for the record.

1

## I.     Findings of Essential Facts

The following facts were adduced at trial:

Robert James, Sr., the father of the ten Defendants, passed away on March 22, 2008.  His will indicated that each of his children should share equally in the net proceeds of his estate, including two properties on Lenox Street in Hartford, Connecticut.  Robert James, Sr.'s probate estate closed on February 4, 2009.  Ira James testified that the final decree of the probate court ordered that each of the ten Defendant children share equally in the net proceeds of their father's estate. On or about September 27, 2011 the Defendants completed the sale of the two Lenox Street properties, the net proceeds of which include the $9,437.50 at issue in this action.  The proceeds of this sale were to be distributed to the Defendants in February, 2012.

Ira James has alleged that prior to his death his father Robert James, Sr. owned and lived in his three-family home on Lenox Street, in which he was the only resident because the home was antiquated.  Concerned with his father's safety, Ira James arranged for his father to borrow $8,000 from Ira's credit union in order to make improvements to the property and to ready it for additional tenants.  Ira James testified that he brought the loan application to his father, who completed and signed it.  Ira later took the application to the credit union and arranged for a credit union official to falsely attest that he witnessed Robert James, Sr. sign the loan documentation.  Ira James introduced into evidence a note to the credit union for $8,000 purportedly signed by Robert James, Sr.  It was

marked as Exhibit 1.  Exhibit 1 demonstrates that the loan was issued to Robert James on October 24, 2004 and that no guarantor or collateral existed.  James testified that the loan term was for approximately sixty months.

Ira James further testified that, although the loan was solely in his father's name, Ira made the monthly payments by having the credit union automatically transfer funds from his credit union account to his father's account to be applied to his father's loan.  He testified that he directed and gave the credit union permission to automatically transfer the funds from his account to his father's. Ira James offered no documentary evidence that he or his father authorized these transfers and payments and for what purpose.  Ira James presented twenty-two statements of his credit union account (which he testified were issued quarterly), indicating various transactions identified as "transfer/withdrawal."  The statements did not indicate to whom or for what purpose the money was transferred or withdrawn.  These account statements were marked as Exhibit 3. Ira James did not present evidence that he authorized money to be transferred from his account to his father's account, nor did he show evidence that the withdrawals/transfers from his father's account coincided with the dates and times of deposits to or loan payments made from his father's account.  Ira James also offered documentation, marked as Exhibit 4, evidencing that Robert James, Sr. had repaid the loan in full.

Further, while Ira James testified that the proceeds from this $8,000 loan paid for physical improvements to the Lenox Street apartments, including improvements to lighting and the installation of cabinets and countertops in the

kitchen, he admitted that he had no receipts or other documentation demonstrating that the loan funds were used to make improvements to this property.  He also testified that his daughter moved into the house after improvements were made, indicating that he had a personal interest in improving the home.  Additionally, although Ira testified that his sister, Thelma Russell, also a Defendant in this action, could have attested that the loan funds were applied to home improvements, Thelma Russell failed to appear before the Court to so testify.  Finally, he testified that his brother Jacob also moved into an apartment in the house.  There was no evidence of the rent his daughter and brother Jacob paid to live in the house or how any rent they paid was applied.

Ira James attested that his father verbally agreed to repay Ira for his payment on the loan and that no written agreement exists memorializing such promise.  Mr. James testified that later, when Robert James, Sr. was in poor health and would not survive long, he notified three of his siblings (also Defendants in this action) that he was paying his father's loan.  He further testified that his father did not substantiate his claim to his siblings.  The siblings he testified he told about the loan repayment were Irving, the executor of his father's estate; Thelma Russell; and Jacob, who had moved into one of the apartments in his father's triplex on Lenox Street.  Ira also testified that he did not tell Irving, Thelma, or Jacob that he expected repayment.  Rather, Ira thought "it was understood" that they "would do the right thing" by repaying him from the proceeds of the sale of the Lenox Street property.  He also testified, however, that

4

he told Irving that he had been paying the loan and that he expected to be repaid, to which Irving allegedly agreed.

After Robert James, Sr.'s death his estate was probated.  Irving James did not include the loan as a debt of the estate and Ira James testified that he did not make a claim against the estate for reimbursement for paying the loan.  Nor did he determine whether Irving had included it as a debt of the estate.  As noted previously, the estate closed on February 4, 2009.  While Ira first asserted that he knew nothing about the probate proceedings and was only vaguely aware that they existed until after he received a copy of his father's will and its settlement from Attorney Lyle's predecessor, Attorney Barlow, reflecting an equal distribution of his father's estate to him and his siblings, upon questioning he admitted that he had probably received notice of the proceedings.  He further admitted that he did not contest the proposed distribution of his father's estate in the probate proceeding despite knowledge that the estate was being probated.  In the absence of his objection, the final decree of the probate court ordered that each of the ten Defendant children share equally in the net proceeds of their father's estate.  Ira James did not appeal this determination.  Mr. James testified that the only time he made a claim for repayment of the loan amount was after the Lenox Street property was sold, when he gave Attorney Lyle copies of some of the credit union account statements and demanded a disproportionate share of the estate in reimbursement for paying the loan.[1]  Several of his siblings

---

[1] The Lenox Street property was sold in September 2011.  Ira James testified that he presented Attorney Lyle with documentation as to his claim to the loan

contested Ira's claim to a larger share of the estate based on repayment of his father's loan.

Finally, Ira James failed to introduce any evidence of how the respondents were unjustly enriched, if at all.  He failed to introduce evidence of the appreciated value of the home after the improvements funded by the loan proceeds were made and he failed to introduce any evidence of the difference between the price for which the house was sold versus the price for which it would have sold had the improvements not been made.

Based on the facts adduced at trial, the Court finds that Ira James has not proved by a fair preponderance of the evidence that the loan was his father's debt, that he repaid his father's debt, that the loan was used to improve the Lenox Street property, that his siblings derived a disproportional benefit from the proceeds of the loan, or that his siblings agreed to reimburse him through a reallocation of their share of their father's estate or otherwise for the cost of improvements to the Lenox Street property.

## II.    Analysis

First, this Court holds that the probate exception to federal jurisdiction does not bar this action.  The probate exception to federal jurisdiction "is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." *Lefkowitz v. Bank of New York*, 528 F.3d 102, 105 (2d Cir. 2007) (citing *Marshall v. Marshall*, 547 U.S. 298, 307

---

amount in 2010.  As these dates are not germane to the Court's decision, it is unnecessary to reconcile them.

(2006)).  The probate exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from disposing of property that is in the custody of a state probate court."  *Marshall*, 547 U.S. at 296.  It does not, however, "bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."  *Id.*  Pursuant to the probate exception, a federal court should decline subject matter jurisdiction only if a plaintiff seeks to administer an estate, probate a will, or do "any other *purely* probate matter," or if a plaintiff seeks "to reach a res in the custody of a state court."  *Lefkowitz*, 528 F.3d at 106 (citing *Marshall*, 547 U.S. at 312).  Here, Ira James is not asking this Court to administer an estate, probate a will, perform purely probate matters, or reach a res in the custody of a state court.  Rather, James brings an unjust enrichment claim against the nine other beneficiaries of his father's estate, which is permitted under Connecticut law.

"[W]herever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract, restitution of the value of what has been given must be allowed." *Town of New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 433, 451 (2009) (quoting 26 S. Williston, Contracts (4th Ed. 2003) § 68:4, p. 57).  Unjust enrichment provides the basis for recovery in such a situation.  *Id.*  "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another."  *Id.* at 451 (citation

omitted).  In analyzing a claim of unjust enrichment, the test a court must employ is "what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard."  *Id*.  Unjust enrichment is a "broad and flexible remedy."  *Id*.  A party seeking recovery for unjust enrichment must prove "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiff['s] detriment."  *Id*. at 451-52.  "This doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated.... The question is: Did [the party liable], to the detriment of someone else, obtain something of value to which [the party liable] was not entitled?"  *Id*. at 452 (citing *Franks v. Lockwood*, 146 Conn. 273, 278 (1959)).  Further,

> determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings ... that are subject only to a limited scope of review on appeal.... Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion.... This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court.

*Id*. (citation omitted); *Schirmer v. Souza*, 126 Conn. App. 759, 764 (2011) (same).

Finally, the measure of restitution in an unjust enrichment case ordinarily is not

the loss to the plaintiff but the benefit to the defendant.  *Ramondetta v. Amenta*,

97 Conn. App. 151, 165 (2006).

Unjust enrichment, although a quasi-contract grounded in the theory of

restitution, may be related to the existence of an implied contract.

> An implied in fact contract is the same as an express contract,
> except that assent is not expressed in words, but is implied
> from the conduct of the parties.... On the other hand, an
> implied in law contract is not a contract, but an obligation
> which the law creates out of the circumstances present, even
> though a party did not assume the obligation.... It is based on
> equitable principles to operate whenever justice requires
> compensation to be made.... An implied in law contract may
> arise due to one party being unjustly enriched to the detriment
> of the other party.... Accordingly, an implied in law contract is
> another name for a claim for unjust enrichment.

*Vertex, Inc. v. Waterbury*, 278 Conn. 557, 573-74 (2006).  Pursuant to Connecticut

law, a plaintiff may prevail under unjust enrichment on an implied contract theory

"by demonstrating that it performed services at the request of the opposing party

and in expectation that compensation would be made for them."  *Nora Beverages,*

*Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 752 (2d Cir. 1998).

Here, there are facts inconsistent with the assertion that Robert James, Sr.

borrowed the money at issue.  The Court finds suspect the assertion that a credit

union official would falsely attest to and notarize a signature on its own loan

document.  Further, Ira James has failed to prove that he had an agreement to be

reimbursed.  Instead, he argues that his siblings should reimburse him for the

funds he expended to repay a loan to make improvements of which they neither

knew nor approved, as to either the expenditures or the loan to finance them.

James has presented no evidence that he had an agreement in words or deeds

9

with anyone to reimburse him, and no factual support was adduced at trial of

James' siblings' acquiescence or knowing acceptance of a benefit to them.  To

the extent that Ira James testified that he informed his brother Irving that he was

paying his father's loan and that Irving agreed to reimburse him, an assertion that

Ira James' other testimony contradicted, the evidence presented at trial indicates

that this arrangement was too indefinite and uncertain as to its terms to

constitute a contract.  Moreover, other plausible inferences may be drawn from

the facts introduced at trial that are inconsistent with James' assertion that he

was repaying the loan on behalf of his father: most notably that his daughter and

brother both moved into apartments in Robert James' triplex for which they

would be paying rent that presumably would exceed the monthly amount of the

loan (approximately $133 monthly, if the term of the loan was sixty months as Ira

James testified).  The Court thus cannot conclude that Ira James had any implied

contractual relationship with his siblings for reimbursement of the funds

expended in paying off his father's loan.  *See, e.g., Stewart v. King*, 121 Conn.

App. 64, 72 (2010) (upholding trial court's dismissal after bench trial of unjust

enrichment claim where the plaintiff "alleged that the defendants were unjustly

enriched as a result of their not abiding by an arrangement that [the trial court]

found not to have existed" due to absence of evidence of course of conduct

implying mother's promise to pay son for materials and services in construction

of home on land owned by mother and stepfather, and where the plaintiff "failed

to establish the amount and basis of his claim of his investment of his time, labor

and money by which the defendants allegedly were unjustly enriched"); *Nora*

*Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 752 (2d Cir. 1998) (affirming grant of summary judgment on plaintiff's unjust enrichment claim where plaintiff failed to establish either benefit to the defendants or that the plaintiff had performed services at the defendants' request under an implied contract theory); *Brighenti v. New Britain Shirt Corp.*, 167 Conn. 403 (1974) (concluding that where plaintiffs had not come to agreement with defendant from which they sought recovery and instead voluntarily expended funds assuming the risk that they would be repaid, there was no quasi-contract entitling plaintiffs to recover under unjust enrichment).  *See also Beattie v. McMullen*, 80 Conn. 160 (1907) (holding that there was no implied promise or constructive contract on the part of the district to pay for the extra work incurred by plaintiff subcontractors, who provided the stone for a municipal bridge to contractors and who had provided higher grade stone than required by the contract, and who knew that the district relied on contractors to furnish stone and understood that subcontractors would furnish stone to contractors, and that contractors were to pay subcontractors directly, and where only the contractors could look to district for payment).

The Connecticut Appellate Court has held, though, that unjust enrichment may be present in the absence of a contractual relationship.  *Schirmer v. Souza*, 126 Conn. App. 759, 767 (2011) (noting that there is "ample appellate decisional precedent and legal authority that a contractual relationship is not a prerequisite to recovery based on unjust enrichment").  Even so, Ira James has presented insufficient factual information for the Court to conclude that, under this set of

**11**

circumstances and the conduct of the parties at issue, it was unjust or inequitable for Ira James' siblings to decline to reimburse him for repayment of the $8,000 loan, or that his siblings were unjustly enriched or benefitted.

First, Mr. James presented no evidence of either the application of the loan proceeds (by way of receipts or any other documentation) to the making of improvements to the Lenox Street property, or of the material appreciation of the Lenox Street property after such improvements were undertaken.

Second, no evidence was presented tending to show that Mr. James' nine siblings unjustly failed to pay Mr. James for the benefits allegedly acquired by the application of the loan proceeds or the appreciation resulting therefrom.  No evidence was presented that Mr. James' siblings agreed to reimburse him for his payments on his father's loan and, indeed, Mr. James testified that he told only three of his siblings of the existence of the loan prior to his father's death.  His father did not substantiate his claim and he did not expressly seek, nor did he expressly receive, a promise from his siblings to reimburse him.

James also testified that he disproportionately benefitted from the improvements to the Lenox Street property.  After improvements were rendered his daughter moved into the third floor apartment above her grandfather's home for a reduced rent, demonstrating that part of the benefit of the alleged loan proceeds accrued to Ira James' immediate family members rather than to his siblings.

Moreover, he testified that none of his siblings had deceived him during or concealed the probate proceedings from him, and that nothing prevented him from presenting his claim during the probate proceedings, facts which could demonstrate that Mr. James did not expect to be, or feel entitled to be, reimbursed for his repayment of the loan or, at the very least, that his siblings did not hinder his ability to seek reimbursement.  Finally, Mr. James has not shown that his siblings were unjustly enriched because he has not shown that  the property appreciated by the improvements, by what margin it appreciated, or that its value was greater at the time it was sold than it would have been had the improvements not been made.  Adding the fact that his daughter lived in the Lenox Street house, Mr. James has not shown that his siblings were disproportionately unjustly enriched.

Lastly, James testified that he had expended time and money for the benefit of and provided services to his father prior to his father's death for which he had no expectation of reimbursement, including cooking meals for his father, cutting the Lenox Street property's grass, removing snow from the property, and caring for the fruit trees on the property.  He further testified that his sister, Thelma Russell, provided services to his father, including taking care of his bills, but no evidence demonstrated that Ms. Russell received additional compensation for these services from her father's estate.  Given these facts, the Court cannot conclude that Ira James' siblings believed that he expected reimbursement for his repayment of his father's loan, nor that they unjustly failed to pay him for the financial service he allegedly provided to his father.

**13**

Even if Mr. James has successfully proven that his siblings have been unjustly enriched, however, his claim is time-barred pursuant to Connecticut's probate statutes.  Connecticut probate law requires that a claim be presented to the estate within 150 days of the appointment of the first fiduciary.  Conn. Gen. Stat. § 45a-356(a).  If a claim is not presented within this time period, "no fiduciary shall be chargeable for any assets that a fiduciary may have paid or distributed in good faith in satisfaction of any lawful claims, expenses or taxes or to any beneficiary before such claim was presented."  *Id.*  Every claim must be presented to the fiduciary in writing, and "[n]o creditor shall be entitled to enforce payment of his claim against assets in the hands of a fiduciary in any proceeding in any court unless his claim is presented" in accordance with the provisions of [§ 45a-358]."  Conn. Gen. Stat. § 45a-358(a), (c).

> The requirement that written claims be submitted to the fiduciary within 150 days of the fiduciary's appointment is intended to permit the fiduciary to assemble the assets of the estate in an orderly manner, identify the creditors and debtors of the estate, distribute the assets in an orderly fashion, and ultimately, pay claims, expenses and taxes in the correct amounts and in the correct order of priority.

*Riendeau v. Grey*, CV106002202S, 2010 WL 3448184, at *2 (Conn. Super. Ct. Aug. 11, 2010).  If a creditor files a claim with the fiduciary, he may not commence suit unless and until such claim has been rejected in whole or in part by the fiduciary. Conn. Gen. Stat. § 45a-363(a).

Although a creditor to an estate may not bring suit against the estate/fiduciary unless he has first presented his claim to the estate and has been rejected in whole or in part, he may bring an action against the beneficiaries of an

estate for a claim he failed to present to the estate.  Conn. Gen. Stat. § 45a-372

provides, in relevant part:

> the failure of a plaintiff to present his claim to the fiduciary as
> prescribed by law shall not impair his right to maintain an
> action against the beneficiaries under section 45a-368;
> provided nothing contained herein shall extend the time
> limited for the commencement of an action to enforce
> plaintiff's claim.

Conn. Gen. Stat. § 45a-372(a).   *See also Popple v. Comm'r of Revenue Servs.*, CV

990497727S, 2000 WL 1207280, *1 (Conn. Super. Ct. July 26, 2000) ("After [the

date of distribution], the claim of the creditor is not extinguished, as was the case

under prior law after expiration of the claims period, but instead the creditor must

pursue his rights and remedies against the beneficiaries of the estate.") (citation

omitted); *Hunt v. Watkins*, CV 940316277S, 1995 WL 781366, *2 (Conn. Super. Ct.

Dec. 29, 1995) ("When a person has a claim against a decedent or the decedent's

estate and the assets of the estate have been distributed, the claimant may

pursue an action under 45a-368 against a beneficiary to the extent of the fair

market value of the property received by the beneficiary.").

A suit against the beneficiaries of an estate must be commenced by the

earlier of (1) two years after the date of the decedent's death, or (2) the expiration

date of the statute of limitations for such a claim.  Conn. Gen. Stat. § 45a-375(c).

As to claims arising after the death of a decedent, suit against the beneficiaries of

an estate must be commenced by the earlier of (1) two years after the date the

claim arose or (2) the expiration date of the statute of limitations for such a claim.

Conn. Gen. Stat. § 45a-375(d).

First, Mr. James never filed suit against the beneficiaries of his father's estate.  He simply informally disputed the equal distribution of the estate after it was probated and made a claim against the proceeds of the sale of the property. It was because Ira James never brought suit that Attorney Lyle was forced to file this interpleader action.  Mr. James also failed to file his claim for reimbursement with the probate court during the pendency of the probate proceedings, even though he had notice of the proceedings and testified that nothing prevented him from asserting his claim.  As such, he is barred from asserting his claim against the estate in a court of law pursuant to Conn. Gen. Stat. §§ 45a-356(a) and 358(c).

Pursuant to Conn. Gen. Stat. § 45a-372, Ira James may maintain an action against the beneficiaries of his father's estate after the estate has been probated and without having asserted his claim during the probate proceedings provided that he has complied with the time limitations enumerated in Conn. Gen. Stat. § 45a-375.  James, however, has not complied with the statutory time limitations as he has never filed suit.

Even if the Court construes this interpleader action as a suit by Mr. James against his siblings, however, it is untimely under the relevant statute of limitations.  Robert James, Sr. died on March 22, 2008.  Because an unjust enrichment claim is an equitable action, "the court may exercise its discretion in determining the applicable statute of limitations."  *Piazza v. First Am. Title Ins. Co.*, No. 3:06CV00765(AWT), 2007 WL 988713, *2 (D. Conn. Mar. 30, 2007); *Mahon v. Chicago Title Ins. Co.*, 3:09CV00690 AWT, 2012 WL 3544883, *2 (D. Conn. Aug. 16, 2012).  Connecticut courts have applied the six year statute of limitations for

**16**

contract actions to unjust enrichment claims.  *See, e.g., Flaherty v. Borough of Naugatuck*, CV054004400S, 2007 WL 586788, at *3 (Conn. Super. Ct. Feb. 2, 2007) (holding that "[t]he six-year contract statute of limitations applies to the present case [for unjust enrichment,]" as unjust enrichment is a form of contract action); *Paradigm Contract Mgmt. Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 3:10CV211 MRK, 2011 WL 4348132, *7, n. 3 (D. Conn. Sept. 16, 2011) ("Although there is no Connecticut appellate authority that squarely addresses the issue, other courts have found that the six-year Connecticut statute of limitations for breach of contract also applies to unjust enrichment claims.").  For his claim to be timely, Ira James must have commenced an action against the estate's beneficiaries by March 22, 2010, two years after the date of his father's death, pursuant to Conn. Gen. Stat. § 45a-375(c).  This action, however, was commenced on June 29, 2012. Thus, even if the Court credits Attorney Lyle's interpleader as a suit by James, Ira James' claim for unjust enrichment against the beneficiaries of his father's estate is untimely under Conn. Gen. Stat. § 45a-375.

## IV  Conclusion

For the foregoing reasons, judgment must enter against Ira James on his unjust enrichment claim.  Pursuant to this Court's April 24, 2014 Order at docket no. 51, Plaintiff Patrick G. Lyle shall receive attorney's fees in the amount of $2,940.84, to be paid from the funds deposited with this Court on October 28, 2013, which at that time totaled $9,437.50.  The remainder of those funds (including interest accrued) shall be distributed, pro rata, in equal shares to the ten Defendants in this action: Ira L. James, Irving James, Thelma R. Russell,

**17**

Sherman James, Jacob James, Duane K. James, Ann Abdullah, Herman James,

Lester James, and Robert James, Jr.


                                    IT IS SO ORDERED.



                                    _____/s/_____

                                    Hon. Vanessa L. Bryant
                                    United States District Judge



Dated at Hartford, Connecticut: June 25, 2014